# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**MICHAEL J. BRIZZEE, JR.**                                                      **PLAINTIFF**

**V.**                 **CASE NO. 4:24-CV-01002 JM-JTK**

**SOCIAL SECURITY ADMINISTRATION**                        **DEFENDANT**

## RECOMMENDED DISPOSITION

**I. Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**II. Introduction:**

Plaintiff, Michael J. Brizzee, Jr. ("Brizzee"), filed an application for Title II disability and disability insurance benefits on August 17, 2021. (Tr. at 14). In the application, he alleged that his disability began on July 9, 2020. *Id*. The application

1

was denied initially and upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") found that Brizzee was not disabled. (Tr. at 14-25). The Appeals Council denied Brizzee's request for review of the hearing decision on September 19, 2024. (Tr. at 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Brizzee has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

### III. The Commissioner's Decision:

Brizzee meets the insured status requirements of the Social Security Act through March 31, 2026. (Tr. at 16). The ALJ determined that Brizzee had not engaged in substantial gainful activity since the alleged onset date of July 9, 2020.[1] *Id*. The ALJ found, at Step Two, that Brizzee has the following severe impairments: headaches, disorder of the left shoulder, degenerative joint disease of the right knee, cervical spondylosis, lumbar spondylosis and psoriatic arthropathy. *Id*.

The ALJ determined that Brizzee did not have an impairment or combination

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

of impairments that met or medically equaled a Listed Impairment.[2] (Tr. at 17). Next, the ALJ found that Brizzee had the residual functional capacity ("RFC") to perform work at the light exertional level with the following additional limitations: (1) can no more than occasionally climb, balance, stoop, kneel, crouch, crawl, and reach overhead; and (2) must avoid concentrated exposure to noise, vibration, and hazards, such as dangerous machinery and unprotected heights. *Id*.

The ALJ determined that Brizzee was unable to perform any past relevant work. (Tr. at 23-25). Relying upon testimony from a vocational expert ("VE"), the ALJ found that, considering Brizzee's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Brizzee could perform. *Id*. Therefore, the ALJ concluded that Brizzee was not disabled.[3] (Tr. at 58).

## IV. <u>Discussion</u>:

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether

---

[2] See 20 C.F.R. Part 404, Subpart P Appendix 1: "Adult Listing of Impairments."

[3] The relevant time-period for the adjudication of benefits is July 9, 2020, through October 17, 2023, the date of the ALJ's written decision. (Tr. at 24-25).

it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in

4

the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Brizzee's Arguments on Appeal

Brizzee contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He argues that: (1) the ALJ erred at Step Two when he did not find Brizzee's obesity or heart condition to be severe impairments; (2) the RFC did not fully incorporate Brizzee's limitations; (3) the ALJ did not properly evaluate Brizzee's subjective complaints; and (4) the ALJ failed to fully develop the record.

1. **Step Two findings**

Brizzee asserts that at Step Two, the ALJ should have found obesity and cardiac conditions to be severe impairments.[4] Defendant rightly points out that Brizzee does not offer much evidence showing that either of these conditions negatively affected his functional abilities. Brizzee simply argues that because

---

[4] Step Two involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). The claimant has the burden of proving that an impairment is severe, and a diagnosis alone does not mean an impairment is severe. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

obesity was listed in the medical records, it should have been a severe impairment.

Obesity can, in fact, complicate other conditions, including back, knee, hip, and joint pain, among other things. While Brizzee claims that obesity made his impairments more difficult to manage, the record shows that his multiple underlying conditions improved with conservative treatment.

Brizzee treated his knee, back, and shoulder pain with medications, steroid shots, and physical therapy. These treatments improved his pain. (Tr. at 19-21). After Brizzee had a shoulder surgery in 2021, he said he was doing well and a physical therapy exam showed good range of motion. (Tr. at 22-23, 598-600). His doctor told Brizzee that he could continue activities as tolerated, and Brizzee said he felt well enough to play golf (Brizzee later said he did not remember playing golf). (Tr. at 19, 532-538, 679-680). In March 2022, Brizzee said he could not lift his shoulder, but notably, he was not taking any medication for pain at that time. (Tr. at 19). Physical therapy on Brizzee's shoulder led to great results, and in May 2022, notes showed the shoulder was strong and moving well, and that Brizzee had good tolerance for exercise. (Tr. at 19-20, 605-607). Brizzee said he had excellent relief of his shoulder pain after a steroid injection and his pain was at a 1 out of 10. (Tr. at 20-23, 1301-1302). In March 2023, Brizzee's doctor encouraged him to exercise. (Tr. at 1058).

At physical examinations, Brizzee routinely presented with normal gait and

coordination, normal range of motion in his back and neck, full strength in all extremities, and normal cervical lordosis. (Tr. at 19, 22, 500, 506, 513, 669, 737, 825). Brizzee claimed he walked with a cane, but he also reported that right knee pain was improved with steroid injections, and again, clinic exams showed mostly normal gait. (Tr. at 19, 459). And there is no record showing that a treating doctor prescribed a cane. Finally, Brizzee's provider noted in February 2022 that he did not need an assistive device to walk or stand. (Tr. at 1042).

For psoriatic arthropathy, Brizzee treated with Taltz and Skyrizi medications, and he said that the latter effectively controlled his symptoms. (Tr. at 19-21, 837). A clinic note reflected no active psoriasis in November 2022. (Tr. at 19-20, 466, 837-843).

While Brizzee said that he had debilitating headaches, cervical facet injections reduced his headaches. (Tr. at 20, 1055, 1207). Brizzee said that he experienced greater than 70 percent headache pain reduction from a medical branch block and steroid injections. (Tr. at 21, 43, 1055-1058, 1207). At the hearing, Brizzee testified that medication for headaches helped quite a bit. (Tr. at 43).

While certain treatment notes reflect that obesity was one of Brizzee's diagnoses, his simple allegation that obesity "may" impact his other impairments fails to convince the Court that the ALJ erred at Step Two. Nothing in the record

7

from treating or reviewing doctors suggests that obesity, in combination with other impairments, significantly limited Brizzee's functional abilities. No doctor placed any restrictions on Brizzee because of obesity. His doctors encouraged exercise, which undermines Brizzee's claim that obesity was disabling. The record was devoid of evidence suggesting that the ALJ should have found obesity to be a severe impairment.

Likewise, Brizzee argues that cardiac conditions should have been ruled severe at Step Two. He does not explain how cardiac issues impacted his functional abilities. He only cites to a record showing an ER visit for a heart attack in September 2022. (Tr. at 747-775). Brizzee underwent a heart catheterization in the ER and had an angiogram; he was discharged in good condition the next day. *Id*. Brizzee said that nitroglycerin helped. *Id*. Cardiac examinations by Brizzee's treating providers showed grossly normal findings, with regular rate and rhythm. (Tr. at 499, 747-775, 1071).

The ALJ did not ignore cardiac conditions. He discussed and found persuasive the opinion of the state-agency medical expert who reviewed the cardiac ER records. (Tr. at 21, 66-69). The expert noted that testing in the ER revealed no significant heart disease, and that Brizzee was treated conservatively with medication. *Id*. While not specifically addressing the cardiac event, the ALJ considered opinions based on

those records. Moreover, Brizzee has not identified any functional limitations stemming from a heart condition. Brizzee has not persuaded the Court that the ALJ should have found cardiac conditions to be severe.

### 2. RFC finding

Brizzee next claims that the RFC did not incorporate all of his limitations.[5] The ALJ considered the record, as a whole, before deciding on the RFC. In particular, he found persuasive the state-agency reviewing medical experts' opinions on the RFC. (Tr. at 21). After reviewing the medical evidence, these experts found that Brizzee could perform light work. (Tr. at 57-69). One expert further added that Brizzee could only occasionally perform postural activities, only frequently reach overhead, and must avoid concentrated exposure to noise, vibration, and hazards. (Tr. at 21, 57-69). The ALJ incorporated these limitations into the final RFC, because they were well-supported by the record.

The ALJ also explained how he considered the opinions of two of Brizzee's

---

[5] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).   In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

treating providers, Kenneth Turner, M.D, and Jessica McNeese, APN.[6] Those providers completed several opinion statement's essentially opining that Brizzee could not work at all due to his physical impairments. (Tr. at 21, 22, 1040-1049, 1160-1165). The ALJ found these opinions were not persuasive, due to Brizzee's own statement that treatment helped with pain, and due to APN McNeeses' own notes of normal range of motion in Brizzee's neck and back, with no lesions, and normal gait. (Tr. at 21-22, 510-540).

The ALJ also considered Brizzee's ability to perform daily activities; indeed, his doctor suggested that he continue activities as tolerated. (Tr. at 680). Brizzee said he was virtually bedridden, but he admitted he had no problem with personal care, could prepare simple meals, could do daily chores, could drive, could shop in stores,

---

[6] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." See 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c) (2017). Instead, ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 416.920c(c). An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and it is consistent with other evidence in record." *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, at *1 (8th Cir. May 31, 2022) (unpublished per curiam) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020) (first citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017); then citing Articulation Requirements for Medical Opinions and Prior Administrative Medical Findings – Claims filed on or after March 27, 2017, SSA POMS DI 24503.030).

and could watch his grandchildren play sports.[7] (Tr. at 248-258).

The ALJ's assigned RFC was supported by a record showing moderate conditions that improved over time with conservative treatment, as well as grossly normal clinical examinations. The RFC did limit Brizzee to occasional postural movements and limited him to exposure to things that would cause headaches.[8] The RFC accounted for Brizzee's credible limitations.

### 3. Subjective complaints

Brizzee claims that the ALJ did not properly evaluate his subjective complaints.[9] Again, Brizzee testified that he could hardly perform any activities due

---

[7] Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[8] Brizzee claims that the jobs identified by the VE at Step Five had too much noise to be compatible with the RFC for no concentrated exposure to noise. The jobs identified by the VE had a noise level up to moderate 3. (Tr. at 50-54). Brizzee says that he could not perform jobs with a moderate 3 noise level as defined by the Selected Characteristics of Occupations ("SCO"), a companion publication used in disability cases. Brizzee says the RFC for noise was defective because it was silent as to exact noise level. But Defendant properly discusses a line of case law, where virtually identical RFCs like the one in this case aligned with jobs with a noise level no greater that moderate 3. *Gray v. Kijakazi*, No. 4:21-CV-00186-LPR-JJV, 2022 WL 256582, at *2 (E.D. Ark. Jan 26, 2022); *Steele v. Kijakazi*, No. 2:180CV-00012 PLC, 2022 WL 715011, at *5, 13-15 (E.D. Mo. Mar. 10, 2022); *Cash v. Comm'r of Soc. Sec.*, No. 3:23-CV000861-KDB, 2024 WL 3282472, at *3, 7-8 (W.D.N.C. July 2, 2024). Considering these cases, the Court concludes that Brizzee's argument fails.

[9] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a

to pain. But as noted above, Brizzee said that he could perform a range of daily activities. His doctors did not place any functional restrictions on him. No doctor prescribed an assistive device. The ALJ discussed Brizzee's pain and his treatment thereof. Clinic examinations were grossly normal. Conservative treatment was effective. The ALJ discussed the necessary factors and correctly decided that Brizzee's complaints were not entirely consistent with the balance of the record. (Tr. at 18-20).

### 4. Duty to Develop Record

Finally, Brizzee avers that the ALJ did not properly develop the record.[10] He takes issue with the ALJ's findings, because the ALJ did not based his RFC solely on any particular treating provider opinion. But there is no requirement that the ALJ do that.[11] The ALJ assessed the record as a whole, considering treatment records,

---

claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

[10] An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the claimant and the ALJ's duty to develop is not never-ending. *Id*. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

[11] *Harvey v. Colvin*, 839 F.3d 714 (8th Cir. 2016) (opinion not required from treating or examining physician for RFC).

response to treatment, nature of pain, daily activities, medical opinion evidence, Brizzee's and the VE's testimony, and all other relevant evidence. There was no issue in conflict meriting further development. As discussed above, Brizzee's moderate conditions improved with conservative treatment, and he was able to perform a variety of daily activities. The record, as a whole, supported the ALJ's finding that Brizzee was not disabled, and no further development was needed.

### V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err at Step Two, he properly evaluated Brizzee's subjective complaints, and the record was fully developed. Moreover, the RFC incorporated all of Brizzee's credible limitations. The finding that Brizzee was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 19th day of March, 2025.

_____
UNITED STATES MAGISTRATE JUDGE